## STATE FARM MUTUAL AUTOMOBILE INS. CO.

v.

### Thomas E. LIBBY D/B/A Twin City Florist, et al.

Supreme Judicial Court of Maine.

Argued Sept. 7, 1994.
Decided March 9, 1995.

Catherine Connors (orally) Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiff.

Harry B. Center (orally) and Karen B. Lovell, Smith, Elliott, Smith & Garmey, Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

Philip A. Zukatis appeals from a summary judgment entered in the Superior Court (York County, *Fritzsche, J.*) declaring that State Farm Mutual Automobile Ins. Co. ("State Farm") has no duty to defend or indemnify Thomas Libby or Dorothea Dube for claims resulting from an automobile accident in which Zukatis was injured. Zukatis contends that Libby made a premium payment by placing a check in the mail five hours before the cancellation deadline. Even if Libby did mail a check in payment of the policy premium before the cancellation deadline, he could have had no expectation that his policy would be in force on the day of the accident, given the parties' prior course of dealing and the clear language of the contract. We affirm the judgment.

In December, 1990, Thomas Libby arranged to insure his commercial van with State Farm from January 24, 1991 until July 24, 1991. Libby paid half of the required premium before the effective date of coverage. The policy obligated him to pay the balance of the premium sixty days later, or by March 25, 1991. Libby finally deposited the second payment in the mail on Saturday, May 11, 1991 at 7:00 p.m.

State Farm had sent a cancellation notice to Libby on April 26, stating in part: "We have not received the full amount required to keep this policy in force so in accordance with its cancellation provisions your policy identified in this notice is hereby cancelled effective 12:01 A.M. standard time May 12, [19]91 due to non-payment of the premium. No further notice will be sent to you."

Libby had insured vehicles with State Farm in the past, and habitually waited until the last minute to deposit his premium payments in the mail. Libby had received in return "Reinstatement Notices," informing him that his coverage had lapsed and been

reinstated, with no coverage between the date of cancellation and the date of reinstatement. Libby admitted receiving the notices, but said he believed he was covered despite the plain language, because the company never reduced his premiums to reflect the dates during which he had no coverage. The reinstatement notice belies this, providing as it does a policy credit to reflect the two days that Libby's vehicle was not covered.

On Sunday afternoon, May 12, Dube, an employee of Libby, drove Libby's van into Philip Zukatis as Zukatis was riding his bicycle. State Farm denied coverage based on Libby's non-payment of the premium, but undertook to defend Libby while reserving its rights to contest its liability, and brought this declaratory judgment action to determine its responsibility for coverage on the date of the accident. The court initially denied State Farm's motion for summary judgment, but granted the renewed motion.

### The parties' reasonable expectations

■ The parties vigorously argue general rules as to what constitutes payment. Whether Libby made payment by placing his check in the mail on Saturday evening is irrelevant in the instant case, however. In Maine the issue is what the insured's objectively reasonable expectations should be, based on the language of the policy. *Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 921 (Me.1983). The language of the policy and cancellation notice require that the insured "make payment" prior to the time of cancellation. While the policy language might qualify as ambiguous, State Farm's response to previous late payments resolved any possibility of ambiguity. Libby acknowledged receiving notices, after remitting a late payment, informing him that

his coverage had been reinstated subject to a lapse in coverage between the time of cancellation and the date of reinstatement. Libby could not reasonably expect to be covered on Sunday, May 12, the day of the accident, when he had mailed his payment the night before.

### Sunday cancellation

■ Zukatis further argues that State Farm could not cancel the policy on a Sunday. The Maine Automobile Cancellation Control Act requires that insurers provide an insured with at least ten days notice prior to cancellation. 24–A M.R.S.A. § 2915 (1990).[1] Zukatis contends that the general rule of time computation, as provided in M.R.Civ.P. 6(a)[2], and as cited in *Valley Forge Ins. Co. v. Concord Group Ins. Co.,* 623 A.2d 163, 164 (Me.1993), applies in the instant case to delay the effective date of cancellation to 12:01 a.m. on Tuesday, May 14 (Monday would be the last day available to Libby to make payment).

While we did refer to Rule 6(a) as support for applying the general computation rule to *Valley Forge,* we did so to answer the narrower question whether the statutorily prescribed ten-day notice period should be read to require ten full days, rather than nine full days with cancellation occurring at the beginning of the tenth day. Applying the basic principle of excluding the first day and including the last allows consistency in the computation of these periods, and is consistent with general practice. 17 George J. Couch, et al., *Couch on Insurance 2d* § 67:162 (Rev. ed. 1983). *Valley Forge* did not endorse the wholesale application of Rule 6(a) to section 2915. "The plaintiffs argue that the [mailing] period of section 2915 must

**1.** 24–A M.R.S.A. § 2915 (1990) reads in pertinent part:

No notice of cancellation of a policy shall be effective unless received by the named insured at least 20 days prior to the effective date of cancellation, or, when the cancellation is for nonpayment of premium, at least 10 days prior to the effective date of cancellation.... A postal service certificate of mailing to the named insured at the insured's last known address shall be conclusive proof of receipt on the 5th calendar day after mailing.

**2.** M.R.Civ.P. 6(a) reads in pertinent part:

In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a holiday.

not end on a Sunday or legal holiday when no mail is delivered. We need not decide that question, however, because a cancellation notice received on January 1 could not properly be effective until January 12." *Valley Forge Ins. Co. v. Concord Group Ins. Co.*, 623 A.2d at 164. We decide here that our statutory authority to prescribe rules, 4 M.R.S.A. § 8 (1989), the language of Rule 6(a), and the legislatively imposed rule of construction, 1 M.R.S.A. § 71(12) (1989), preclude our applying Rule 6(a) to extend the effective cancellation date in the instant case.

Rule 6(a) applies to the computation of "any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute...." For the rule to apply in the instant case, section 2915 must be an "applicable statute." The "applicable statutes" contemplated by Rule 6(a) are "those concerned with procedural matters." *Bellegarde Custom Kitchens v. Leavitt*, 295 A.2d 909, 911 (Me.1972) (finding the right to enforce a materialman's lien to be substantive in nature and thus not applying Rule 6(a)).

In response to our decision in *Bellegarde*, the Legislature considered amendments to the rules of construction, 1 M.R.S.A. § 71, pertaining to statutory time periods. The initial proposal would have applied Rule 6(a) to *any* statutory time period: "The running of statutory time periods shall be governed by and computed under Rule 6 of the Maine Rules of Civil Procedure, or other provisions governing time computations as shall be promulgated by the Maine Supreme Judicial Court." L.D. 241 (106th Legis.1973). The Statement of Fact following this proposed amendment read:

> The purpose of this Act is to insure that any statute in which there is a running of time period is governed as to the method of computing that time by Rule 6, Maine Rules of Civil Procedure, or other provisions which may be promulgated in the future. Rule 6 extends the time period when a Saturday, Sunday or legal holiday falls at the end of the statutory time peri-

od. The Act would insure uniformity of computation of all time periods.

L.D. 241, Statement of Fact (106th Legis.1973). The Committee on the Judiciary rejected this proposal and instead proposed the amendment that was ultimately enacted, one that limited the application of Rule 6(a). As enacted,[3] 1 M.R.S.A. § 71 read in pertinent part:

> The statutory time period for the performance or occurrence of any act, event or default *which is a prerequisite to or is otherwise involved in or related to the commencement, prosecution or defense of any civil or criminal action or other judicial proceeding* shall be governed by and computed under Rule 6(a) of the Maine Rules of Civil Procedure....

Comm.Amend. "A" to L.D. 241, No. S–21 (106th Legis.1973) (emphasis added). The Statement of Fact following the committee amendment reads: "The purpose of this amendment is to limit the scope of the bill being amended to civil or criminal actions or other judicial proceedings...." Comm. Amend. "A" to L.D. 241, No. S–21, Statement of Fact (106th Legis.1973). The legislative intent to limit the application of Rule 6(a) to statutory time periods related to the commencement, pursuit, or enforcement of civil actions is evident. The legislation would mandate a different result in a *Bellegarde* type fact situation, as the time period in such a situation relates to the commencement of a civil action. The legislation does not, however, allow the leap we would have to take to apply Rule 6(a) to the instant case, where the time period bears no relation to the commencement, pursuit, or enforcement of a civil action.

The more limited language of § 71(12) as enacted is consistent with the commentary of *Maine Civil Practice*. "Rule 6(a) lays down certain simple rules for the computation of time periods *relating to procedure*, whether the time period is prescribed by the rules or by any applicable statute." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 6.1 (2d ed. 1970) (footnote omitted) (emphasis add-

---

**3.** The provision has since been amended to include proceedings of the Public Utilities Commis-

sion. 1 M.R.S.A. § 71(12) (1989).

ed). The commentary cautions against applying Rule 6(a) so as to alter the substantive rights of a litigant, noting that such an application would "give the rule an effect beyond the power granted the Supreme Court by the rules enabling act." *Id.* (footnote omitted). The rules enabling act authorizes us to "prescribe, by general rules, for the Administrative, Probate, District and Superior Courts of Maine, the forms of process, writs, pleadings and motions, and the practice and procedure in civil acts at law." 4 M.R.S.A. § 8 (1989). The *Maine Civil Practice* commentary continues:

> However, the sensible provisions of Rule 6(a) should be given great and even controlling weight in interpreting statutory time provisions, as for example, those relating to attachments. Even assuming that such provisions are substantive for this purpose ... a computation rule parallel to that of Rule 6(a) should be applied in construing the statute. Furthermore, the reenactment of the statutory time periods in connection with the promulgation of the rules indicates that no policy contrary to Rule 6(a) was desired by the legislature.

1 Field, McKusick & Wroth, *Maine Civil Practice* § 6.1 (2d ed. 1970) (citation omitted). The authors urge the application of a parallel rule not to any statute containing a time period, but only to those statutory time periods related to procedure that may also have a substantive component or result. We have so applied the rule in such cases. In *Dishon v. Oliver*, 402 A.2d 1292 (Me.1979), we applied the Sunday extension provision to the time period allotted for recording a divorce judgment. *Id.* at 1294. We noted that Rule 6(a) had been incorporated by reference by § 71(12). *Id.* at 1293. This application certainly affected the substantive rights of the litigants, preserving as it did the defendant's interest in real estate acquired in the judgment, but, just as certainly, the statutory time period was one related to procedure.

■ The statutory time period involved in the instant case in no way relates to court procedure, but affects a right of contract. Section 2915 of the Maine Automobile Cancellation Control Act prohibits an insurer from cancelling an insurance policy unless the insured receives notice at least 10 days (in the case of cancellation for nonpayment of premium) prior to the effective date of cancellation. The statute makes no provision for extensions when that date falls on a Sunday or holiday, although any consecutive ten-day period must include at least one Saturday and one Sunday and maybe a holiday. Given the language of § 2915, the limits of the rules enabling act, and the intended scope of Rule 6(a) as suggested by the rule of construction, we have no authority to apply Rule 6(a) so as to extend the effective date of cancellation in the instant case.

The entry is:

Judgment affirmed.

WATHEN, C.J., and GLASSMAN, CLIFFORD and DANA, JJ., concurring.

ROBERTS, Justice, with whom LIPEZ, J., joins, dissenting.

I agree with the Court's conclusion that 1 M.R.S.A. § 71(12) (1989) by its terms does not operate to render M.R.Civ.P. 6(a) applicable to the computation of time pursuant to 24–A M.R.S.A. § 2915 (1990). Nevertheless, I must respectfully dissent. In *Valley Forge Ins. Co. v. Concord Group Ins. Co.*, 623 A.2d 163 (Me.1993), we applied by analogy the method of calculating time described in Rule 6(a). Because the Legislature did not prescribe the method, we deemed it appropriate to look to Rule 6(a) so as to exclude the day of presumed receipt, January 1, from the statutory period. By parity of reasoning, I would apply Rule 6(a) in this case to exclude Sunday as the last day of the period. The fact that the Legislature did not include this statutory period in section 71 did not prevent our use of 6(a) in *Valley Forge* and it should not do so here. In each case the use of the 6(a) analogy is justified by the same principle—providing an insured with a meaningful ten days to avoid cancellation of the policy or obtain a new policy. That principle is faithful to the protective purpose of the statute. By its enactment of section 2915 the Legislature modified the contractual right of the

insurer to cancel an automobile insurance policy. The method of calculating time described in Rule 6(a) simply offers a sensible way of applying the Legislature's protective statute.